UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT DOWLING and JESSICA DOWLING,

          Plaintiffs,

- against -

KUCKER KRAUS & BRUH, LLP; KUCKER & BRUH, LLP; and ALAN D. KUCKER,

          Defendants.

99 Civ. 11958 (RCC)

MEMORANDUM & ORDER

**RICHARD CONWAY CASEY, United States District Judge:**

    Robert and Jessica Dowling ("Plaintiffs") brought this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o, alleging that the law firm of Kucker Kraus & Bruh, LLP; the firm's successor-in-interest, Kucker & Bruh, LLP; and attorney Alan D. Kucker ("Defendants") are liable under the FDCPA because they prepared and sent a rent-demand letter to Plaintiffs, on behalf of Plaintiffs' landlord, that failed to include the warnings and notices required by the FDCPA. The Court granted partial summary judgment to Plaintiffs on the issue of liability. Plaintiffs now move for summary judgment for and awarding damages, costs, and attorney's fees under 15 U.S.C. § 1692k(a). For the following reasons, Plaintiffs' motion is **GRANTED**, as modified in this memorandum. Plaintiffs are awarded $1,100.00 in statutory damages and $20,669.50 in costs and attorney's fees, for a total of **$21,769.50**.

**I.    BACKGROUND**

    The following facts are undisputed except where noted. During the period in question, Defendants regularly collected past-due rent from tenants through proceedings in the Civil Court of the City of New York, Housing Part ("Housing Court") under Article 7 of the New York State Real

Property Actions and Proceedings Law. Defendants, whose legal practice concentrates in the areas of real estate and rent regulation, maintained a "paralegal nonpayment unit" to process calls and information from their landlord-clients with respect to past-due rent owed by tenants. After receiving information regarding past-due rent, the unit would open a file, assign the matter a file number, prepare a rent-demand notice bearing the particular file number, obtain the signature of the landlord-client on the letter, and send the rent-demand letter to the tenant or tenants using a process server. In 1999, Defendants prepared and sent more than 300 such rent-demand letters.

Defendants concede that they adopted the practice of having their clients sign the rent-demand letters that they prepared in order to avoid the requirements of the FDCPA after (1) the Second Circuit decided Romea v. Heiberger & Associates, 163 F.3d 111 (2d Cir. 1998), which affirmed the district court's determination that attorneys who regularly send rent-demand notices to tenants must comply with the requirements of the FDCPA, and (2) Defendants were sued in January 1998 for sending a rent-demand letter that lacked the notices required by the FDCPA. Rather than change the rent-demand notices that they prepared so as to comply with the requirements of the FDCPA, Defendants attempted to avoid FDPCA compliance by ceasing to actually sign the rent-demand notices that they continued to draft, prepare, print, and have served.[1]

---

[1] As the Court also noted in its March 28, 2002 decision, however, the Second Circuit made it clear in Romea that liability under the FDCPA is focused on those who actually prepare the document. See Romea, 163 F.3d at 117 (finding that defendant law firm was not exempt from liability under the FDCPA because, although Congress intended to exempt process servers from liability, it did not intend to exempt "those who prepared the communication that was served on the consumer," and noting that "[t]o read Congress, instead, as having carved out a wholesale exemption for anyone who prepares a communication—no matter how violative of the safeguards that the FDCPA affords debtors" would "stretch the statutory language" and "significantly impede the statute from remedying the 'mischief' to which it was addressed"). As in Romea, the Court held here that Defendants were not exempt from the requirements of the FDCPA when they prepared the letter at issue because their "involvement extended beyond mere service of notice" on the tenant Plaintiff.

In 1999, Plaintiffs failed to make certain payments to their landlord, the Missionary Sisters of the Sacred Heart ("Missionary Sisters"). Defendants prepared a rent-demand letter, a prerequisite to the commencement of a summary nonpayment proceeding, on behalf of the Missionary Sisters. Defendants sent the document to Sister Agnes Santomassimo, the Treasurer of the Missionary Sisters, who signed the letter and returned it to Defendants, who then gave the letter to a process server for service on Plaintiffs. The letter, which was dated June 30, 1999 and received by Plaintiffs on July 7, 1999, was addressed to both Plaintiffs and sent to their home address. The letter demanded the payment of $3,804.90 in allegedly past-due rent within three days, but did not disclose that Defendants were attempting to collect a debt and that any information obtained would be used for that purpose, did not provide Plaintiffs with a 30-day validation notice (i.e., a 30-day period to dispute the bill), or otherwise give Plaintiffs notice of their rights under the FDCPA. Although the letter was not on Defendants' letterhead and did not contain Defendants' names or contact information, Defendants' file number ("Case Code: 6418-097") was printed on the bottom face of the letter.

After Defendants' paralegal nonpayment unit sent out the rent-demand letters, an employee would follow-up on the rent demand and obtain consent from the landlord-client to proceed against a tenant in the event that no payment was received. If no payment was received, Defendant would, upon the landlord-client's consent, commence a nonpayment summary proceeding in Housing Court against the tenant. In 1999, Defendants commenced approximately 300 summary proceedings against tenants for nonpayment of rent.

Plaintiffs were served with a Notice of Petition in 1999. In the summary nonpayment

---

See id. at 117-18.

proceeding against Plaintiffs, the Housing Court rejected Plaintiffs' argument that an FDCPA violation could serve as a defense in such a proceeding. See Missionary Sisters of the Sacred Heart, Inc. v. Dowling, 703 N.Y.S.2d 362, 367-68 (N.Y. Civ. Ct. 1999).

Plaintiffs then brought this action. Defendants moved for summary judgment on the ground that the FDCPA was inapplicable and that Plaintiffs' claims were barred by res judicata and collateral estoppel, and Plaintiffs cross-moved for partial summary judgment on the issue of liability under the FDCPA. On March 28, 2002, the Court denied Defendants' motion for summary judgment and granted Plaintiffs' cross-motion for partial summary judgment, holding that Defendants were subject to and had violated the FDCPA in their attempt to collect a debt from Plaintiffs.[2] Plaintiff now moves for summary judgment on the issues of damages and attorney's fees.

Plaintiffs argue that the Court should assess maximum statutory damages against Defendants

---

[2] The Court held that debt collectors cannot evade the requirements of the FDCPA merely by having a creditor sign a violative communication. Because Defendants prepared and sent the rent-demand letter to Plaintiffs, they were required to comply with FDCPA provisions concerning initial communications. See, e.g., 15 U.S.C. § 1692e(11) ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . [including the] failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector."); id. § 1692g(a) ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.").

under 15 U.S.C. § 1692k(a)(2)(A) and that, under 15 U.S.C. § 1692k(a)(3), they are entitled to recover the costs and reasonable attorney's fees generated by their successful prosecution of this action. Defendants argue that the Court should award no or minimal statutory damages and deny or significantly reduce the costs and attorney's fees sought by Plaintiffs.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. Celotex v. Catrett, 477 U.S. 317, 323 (1986). Issues of fact are genuine when "a reasonable jury could return a verdict for the nonmoving party," and such contested facts are material to the outcome of the particular litigation if the substantive law at issue so renders them. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue as to any material fact exists, the Court must assess the record in the light most favorable to the nonmoving party, resolving ambiguities and drawing factual inferences in its favor. See Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999). Summary judgment is improper if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party," but permissible when it is apparent that no rational trier of fact could find in favor of the nonmoving party. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994).

**B.      The Federal Debt Collection Practices Act**

The FDCPA establishes a general prohibition against the use of "false, deceptive, or misleading representation or means in the connection with the collection of any debt." 15 U.S.C. § 1692(e); Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). The purpose of the FDCPA is to "eliminate abusive practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002). Any debt collector who fails to comply with any provision of the FDCPA is liable for actual damages, statutory (additional) damages, and—in the case of a successful action to enforce FDCPA liability—costs and attorney's fees. See 15 U.S.C. § 1692k(a)(1)-(3).

**C.      Statutory Damages Under 15 U.S.C. § 1692k(a)(2)(A)**

Section 1692k(a) provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . (1) any actual damage sustained by such person as a result of such failure [and] (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(1)-(2)(A). The decision on whether to award statutory ("additional") damages under the FDCPA and the size of any such award "are matters committed to the sound discretion of the district court." Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998) ("Savino III") (citing Clomon, 988 F.2d at 1322).

1.  **The Maximum Statutory-Damage Award Under § 1692k(a)(2)(A) is $1,000.00 Per Plaintiff Per Proceeding**

Defendants maintain that Plaintiffs are entitled to a joint maximum of $1,000.00 in statutory damages per proceeding, not per plaintiff per proceeding as argued by Plaintiffs. For the following reasons, the Court holds that the maximum statutory damages available to Plaintiffs under § 1692k(a)(2)(A) is limited to $1,000.00 per plaintiff per proceeding, for a total of a maximum of $2,000.00 in statutory damages in this case.[3]

In arguing that Plaintiffs are jointly entitled to a maximum of $1,000.00 statutory damages, Defendants cite to cases holding that statutory damages under 15 U.S.C. § 1692k(a)(2)(A) are limited to $1,000.00 per proceeding. See Savino III, 164 F.3d at 86 (noting that a district court must "exercise its discretion to determine how much to award, up to the $1,000.00 ceiling"); Harper v. Better Bus. Servs., Inc., 961 F.2d 1561, 1563 (11th Cir. 1992) (holding that § 1692k(a)(2)(A) "provides for maximum statutory damages of $1,000"); Wright v. Fin. Serv. of Norwalk, 22 F.3d 647, 651 (6th Cir. 1994) (limiting statutory damages to "$1,000 per proceeding, not to $1,000 per violation"); Teng v. Metro. Retail Recovery, Inc., 851 F. Supp. 61, 69 (E.D.N.Y. 1994) (holding that

---

[3] Although Plaintiffs seek a total of $4,000.00 in maximum statutory damages under § 1692k(a)(2)(A)—as against Kucker Kraus & Bruh, LLP and Kucker& Bruh, LLP jointly and severally and as against Alan D. Kucker individually—Plaintiffs provide no legal support for their argument that successful FDCPA plaintiffs are entitled to a maximum award of statutory damages of $1,000.00 per plaintiff per proceeding per defendant. Although statutory damages under § 1692k(a)(2)(A) may be as high as $1,000.00 to each plaintiff per proceeding, that multiplication does not extend to defendants. See Weiss v. Fein, Such, Kahn & Shepard, P.C., No. 01 Civ. 1086 (AGS), 2002 WL 449653, at *1 (S.D.N.Y. Mar. 22, 2002) (noting that $1,000.00 represented "the maximum statutory damages allowed under 15 U.S.C. § 1692k(a)(2)" to the lone plaintiff who brought an action under the FDCPA against two defendants—a law firm and a partner of the firm); Evanauskas v. Strumpf, No. 00 Civ. 1106 (JCH), 2001 WL 777477, at *6 n.6 (D. Conn. June 27, 2001) (rejecting the plaintiff's argument "that the court should award . . . a single plaintiff separate statutory damage awards from multiple defendants for the same violation" and finding the two defendants in that case, who were responsible for the same FDCPA violations, were jointly and severally liable).

"the maximum additional damages of $1,000 is to be awarded for each case, and not for each violation or improper communication"); Donahue v. NFS, Inc., 781 F. Supp. 188, 191 (W.D.N.Y. 1991) (holding that a "plaintiff may recover a maximum of $1,000.00 additional damages" under § 1692k(a)(2)(A)).

But each of the cases so holding involved proceedings where damages were awarded to a lone plaintiff. See also Spicer v. Lenehan, No. 03 Civ. 1810 (RNC), 2004 WL 3112554, at *2 (D. Conn. Sept. 14, 2004) (noting that the "FDCPA limits statutory damages for a successful plaintiff to $1,000 for each proceeding" (emphasis added)); Weiner v. Bloomfield, 901 F. Supp. 771, 777 (S.D.N.Y. 1995) (holding, in a case where damages were awarded to a lone plaintiff, that although a district court must consider the frequency and number of violations in calculating damages under § 1692k(a)(2)(A), the court "may not . . . regardless of the number of violations, impose more than the $1,000 statutory penalty provided for actions such as these in the absence of actual damages").

The plain language of the FDCPA indicates that additional damages "in the case of any action by an individual" shall not exceed $1,000.00. 15 U.S.C. § 1692k(a)(2)(A) (emphasis added). Other federal courts have held that the $1,000.00 damage cap of § 1692k(a)(2)(A) applies to the maximum award of statutory damages that each plaintiff may be awarded when more than one plaintiff is entitled to statutory damages. See Howze v. Romano, No. 92 Civ. 644 (SLR), 1994 WL 827162, at *4 (D. Del. 1994) (awarding "the maximum statutory award of $1,000.00 per plaintiff" for a total of "$2,000.00 in additional statutory damages"); Beattie v. D.M. Collections, Inc., 764 F. Supp. 925, 928 (D. Del. 1991) (holding that "when violations of the FDCPA have been proved, 15 U.S.C.A. § 1692k(a)(2)(A) provides for a single recovery of statutory damages per plaintiff per lawsuit" (emphasis added)); Whatley v. Universal Collection Bureau, Inc. (Fla.), 525 F. Supp. 1204, 1205

(N.D. Ga. 1981) (holding that damages under § 1692k(a)(2)(A) "are limited to $1,000 per plaintiff" (emphasis added)).  Further, that Congress provided in § 1692k(a)(2)(B) of the statute for statutory damages "in the case of a class action" to include $1.000.00 "for each named plaintiff" as well as up to "$500.000 or 1 per centum of net worth of the debt collector" for the other class members further indicates that Congress intended to award statutory damages per individual plaintiff per proceeding.  See 15 U.S.C. § 1692k(a)(2)(B).

    2.    **The Statutory Damages Awarded to Plaintiffs in This Case is $550.00 Each**

In determining the amount of a statutory-damage award (up to but not exceeding the maximum of $1,000.00 per plaintiff per proceeding), "the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  See id. § 1692k(b)(1).  No genuine issue of material fact exists in this case as to the frequency, persistence, and nature of noncompliance.  Defendants themselves note that "it is not seriously disputed that Defendants technically violated the statute dozens of times." (Defs.' Mem. Opp'n Pls.' Mot. Summ. J. at 5.)  Although a dispute exists as to the extent to which the noncompliance was intentional, even drawing all inferences regarding this issue in Defendants' favor does not preclude the Court from awarding Plaintiffs statutory damages (i.e., it does not raise a genuine issue of material fact).  See Evanauskas v. Strumpf, No. 00 Civ. 1106 (JCH), 2001 WL 777477, at *6 (D. Conn. June 27, 2001) (awarding $750.00 in statutory damages to the lone plaintiff in that case despite "insufficient evidence for the court to conclude that the violations were intentional or designed to deceive").

The Court concludes that, reviewing the nature of the violation in the present case in light of the statutory factors enumerated in § 1692k(b)(1), a statutory award of $550.00 per plaintiff—for

9

a total of $1,100.00—is appropriate and sufficient "to serve the deterrent purpose of the Act and carry out Congress's broad remedial intent." See Weiner v. Bloomfield, 901 F. Supp. 771, 778 (S.D.N.Y. 1995); see also Savino v. Computer Credit, Inc., 990 F. Supp. 159, 166 (E.D.N.Y. 1998) ("Savino II") (awarding a successful FDCPA plaintiff $500.00 in statutory damages where the defendant debt-collection agency's violation of the FDCPA concerned a single, nonthreatening letter and there was no evidence that the defendant's noncompliance was intentional).

**D.    Costs and Attorney's Fees Under 15 U.S.C. § 1692k(a)(3)**

Section 1692k(a)(3) provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of[,] . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). A prevailing plaintiff in an FDCPA action should be awarded costs and reasonable attorney's fees even if that party is not entitled to actual or statutory damages. Emanuel v. Am. Credit Exch., 870 F.2d 805, 809 (2d Cir. 1989); Savino III, 1645 F.3d at 87. "When a litigant qualifies as one eligible for attorney's fees under the FDCPA, the district court has the discretion to adjust the amount of fees for various portions of the litigation, guided by reason and the statutory criteria [of § 1692k]." Kapoor v. Rosenthal, 269 F. Supp. 2d 408, 412 (S.D.N.Y. 2003); see also Savino III, 1645 F.3d at 87 (noting that the prevailing FDCPA plaintiff's award of costs and fees should be "in amounts to be fixed in the discretion of the court").

Although there is no question that Plaintiffs' action against Defendants to enforce FDCPA liability was "successful"—the Court has already granted partial summary judgment in Plaintiffs' favor that Defendants violated the FDCPA and are liable thereunder—the parties disagree as to "the

costs of the action, together with a reasonable attorney's fee."[4]  Plaintiffs claim that the costs and fees of this action total $36,109.50—$34,440.00 in attorney's fees (representing 172.2 hours spent on this matter by Plaintiffs' attorney Robert E. Sokolski, Esq. between September 1999 and June 2002, billed at the rate of $200.00 per hour), $405.00 in paralegal's fees (representing 5.4 hours billed at a rate of $75.00 per hour), and $1,264.50 in costs and disbursements.  Defendants argue that Plaintiffs' claim for attorney's fees should be significantly reduced, arguing that the total time submitted by Plaintiffs' counsel is excessive and that many of the hours worked were not necessary.  Defendants argue that Mr. Sokolski has an extensive FDCPA practice, "has successfully argued FDCPA cases at the Second Circuit Court of Appeals," and "is undoubtedly one of the pre-eminent FDCPA experts in New York State" such that he spent too much time researching issues with which he should have been familiar.  (Defs.' Mem. Law Opp'n Pls.' Mot. Summ. J. at 13.)  In the papers submitted as part of this motion, Defendants claim that, at most, Plaintiffs are entitled to an award of $10,000.00 in attorney's fees.  (See Defs.' Mem. Law Opp'n Pls.' Mot. Summ. J. at 19.)

**1.     Attorney's Fees**

In calculating attorney's fees awarded under the FDCPA, "courts typically use a 'lodestar'

---

[4] The Court does not address Defendants' attempts to reargue the issue of liability as part of the instant motion because Defendants' "mistake of law" arguments are no defense in this proceeding.  Defendants' argue that they are not liable for violating the FDCPA because their violation stemmed from a "bona fide error."  See 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any [FDCPA] action . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.").  But the motion at issue is not a motion for reconsideration from the Court's March 28, 2000 decision concerning liability.  Rather, it is a motion to assess and award damages, costs, and attorney's fees under 15 U.S.C. § 1692k(a).  In any event, Defendants' view that the FDCPA did not apply to them was a mistaken view of the law after Romea, and § 1692k(c) does not excuse a mistaken view of the law.  See Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989).

figure as a starting point . . . calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for each attorney or paralegal involved." Kapoor, 269 F. Supp. 2d at 412; see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); Savino v. Computer Credit, Inc., 71 F. Supp. 2d 173, 175 (E.D.N.Y. 1999) ("Savino IV") ("It is well established that the proper method for determining the amount of a prevailing party's attorney's fee award [in an FDCPA action] is the 'lodestar' method, in which an initial estimate of fees is obtained by multiplying the number of hours reasonably expended by counsel on the litigation by a reasonable hourly rate.").

The Court should exclude from the initial fee calculation hours that were not "reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours and hours dedicated to severable unsuccessful claims. Hensley, 461 U.S. at 434-35 (also noting that federal district courts should exclude from initial fee calculations any hours not "reasonably expended"); Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); Kapoor, 269 F. Supp. 2d at 413 (noting that the prevailing FDCPA plaintiff can recover attorney's fees only "when the work done [was] reasonably necessary to further the litigation"). As a general rule, "hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority." Hensley, 461 U.S. at 434 (quotation marks, citation, and emphasis omitted).

Any exclusions or reductions made in calculating the lodestar must be explained by the Court. See Savino III, 164 F.3d at 87-88 (finding error in the district court's "failure to explain its specific methodology and rationale supporting the substantial reduction in the number of compensable hours" that were submitted by the prevailing plaintiff in an FDCPA action, and

remanding "with instructions to the court to provide specific reasons for its calculation of attorney's fees, particularly for any decision to set the number of compensable hours at a figure lower than that sought by [the prevailing plaintiff]").

The Court will consider the issue of the reasonableness of Plaintiffs' claim for $34,440.00 in attorney's fees, representing 172.2 hours spent on this matter by Mr. Sokolski between September 1999 and the time that the present motion was filed, by breaking this litigation down into four separate stages: stage one involved the initial investigation of Plaintiffs' claims and initiation of the action; stage two involved discovery efforts; stage three involved the first summary judgment proceedings in this case; and stage four involved litigation over costs and fees.

In stage one of the litigation, Mr. Sokolski spent approximately 23.3 hours in 1999 and 2000 on preliminary matters such as meeting with Plaintiffs and setting up a case file; drafting and filing a complaint and a Rule 1.9 statement; reviewing Defendants' answer and counterclaims; communicating with defense counsel; and preparing a reply to Defendants' counterclaims. Included in these 23.3 hours are 2.1 hours that Mr. Sokolski spent drafting a letter to the Court to request a conference to schedule a motion to dismiss Defendants' defenses and counterclaims, and another 3.2 drafting a letter to the Court regarding Defendants' proposed motion to dismiss. Because an attorney of Mr. Sokolski's expertise and experience could have drafted these letters in half the time, the Court deducts 2.7 of these hours as excessive. Because other portions of the actual hours itemized by Plaintiffs' counsel were unnecessary or excessive, the Court reduces the remaining 20.6 hours spent by Mr. Sokolski during this stage of the litigation to 11.0 hours. See Kapoor, 269 F. Supp. 2d at 415 (finding that 10.7 hours spent preparing a complaint by an attorney with experience in FDCPA cases was excessive and reducing that time to 8.0 hours); Savino IV, 71 F. Supp. 2d at 176 (reducing

attorney's fees on the ground that "[i]nitial client intake, preliminary research, and the drafting of a simple FDCPA complaint should [take] no more than three hours").

During stage two of the litigation, which accounts for approximately 21.2 hours of time, Mr. Sokolski prepared for, conducted, and reviewed various depositions. Having reviewed the deposition transcripts and determined that a certain amount of preparation was redundant and therefore excessive, the Court finds that 15.0 of the hours spent on these and other discovery tasks were reasonably expended.

The bulk of Mr. Sokolski's billing—more than 100 of the 172.2 hours—occurred in stage three of the litigation, which involved the first summary judgment motion in this case. During the last week of October 2000, Mr. Sokolski spent 16.0 hours reviewing Defendants' memorandum in support of their motion for summary judgment, printing out and reading the cases cited therein and discussing the motion with Plaintiffs. He then spent another 37.5 hours researching, drafting, and serving a memorandum of law and accompanying declaration in opposition to Defendants' motion and in support of Plaintiffs' cross-motion. Mr. Sokolski spent 3.0 hours researching and writing a letter to the Court regarding the Court's page-length rules and, thereafter, 10.2 hours editing down Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment so as to comply with the Court's page-limit requirements. Mr. Sokolski spent 11.2 hours reviewing Defendants' statement of undisputed facts and drafting a statement of facts on behalf of Plaintiffs. He then spent 13.4 hours reviewing Defendants' reply papers and drafting reply papers on behalf of Plaintiffs. An additional 7.7 hours were spent preparing for oral argument and appearing before the Court, which granted Plaintiffs partial summary judgment on their behalf on March 28, 2002.

The Court deducts the 13.2 hours expended in relation to the re-edit and re-service of

Plaintiffs' over-long memorandum, in light of Mr. Sokolski's failure to adhere to the Court's page-length rules. The Court agrees with Defendants that the time spent researching, drafting, and editing in conjunction with the motion and cross-motion for summary judgment was excessive in light of Mr. Sokolski's expertise and experience, and therefore finds that, of the approximately 86.0 remaining hours that were dedicated to these and related tasks, only 56.0 of those hours were reasonably necessary to further the litigation. See Savino IV, 71 F. Supp. 2d at 175-76 ("Rather than weighing the reasonableness of each individual time entry, the court may exclude excessive and unreasonable hours from a fee request by making an across-the-board reduction in the amount of hours. . . . [And when] an item-by-item evaluation of the Plaintiff's attorney's time-sheets is impractical, . . . an across-the-board reduction of hours is necessary to reflect a reasonable number of hours.").[5]

---

[5] Defendants argue that the hours should be further reduced on the ground that Savino v. Computer Credit, Inc., 71 F. Supp. 2d 173, 175 (E.D.N.Y. 1999) ("Savino IV"), a case in which the district court reduced a prevailing plaintiff's request for an award of attorney's fees from 187 hours of work to 20 hours, "involves nearly identical circumstances" as are present here. (Defs.' Mem. Law Opp'n Pls.' Mot. Summ. J. at 13.) The Court disagrees. In Savino IV, the district court slashed the hours submitted by plaintiff's counsel as excessive because it was "a fairly simple case, necessitating, in the Court's view, minimal factual development," which "involved a single, unremarkable legal issue—whether [a] letter, which demanded immediate payment, complied with the specific statutory requirements of the FDCPA," and therefore had to be reduced before the lodestar figure could be properly calculated. Savino IV, 71 F. Supp. 2d at 175. Defendants argue that this case, for which Plaintiffs request an award of attorney's fees for 172.2 hours of work, involves "a single, unremarkable legal issue whether the June 30, 1999 letter, which demanded payment of a debt within three (3) days complied with the specific statutory requirements of the FDCPA." (Mem. Law Opp'n Pls.' Mot. Summ. J. at 13.) But, as Defendants acknowledge, this case was one of first impression inasmuch as Defendants were seeking summary judgment in an FDCPA case in which a creditor signed a rent-demand notice that was both prepared and communicated by a law-firm defendant. (See Defs.' Mem. Opp'n Pls.' Mot. Summ. J. at 5 (acknowledging that "this is a case of first impression").) As such, further reduction of the hours submitted by Plaintiffs for stage three of the litigation is not warranted.

In the fourth and final stage of this litigation, Mr. Sokolski spent approximately 26.6 hours working on the present motion for costs and fees. Because an attorney of Mr. Sokolski's expertise and experience could have drafted this motion in considerably less time, the Court finds that only 13.0 of these hours were reasonably expended.

In sum, the Court finds that 95.0 of the 172.2 hours expended by Plaintiffs' counsel were reasonably spent in pursuit of issues where Plaintiffs were successful. The Court further finds that, based on prior awards in FDCPA cases and on its own experience, the $200.00 hourly rate charged by Plaintiffs' counsel—an hourly rate to which Defendants do not object—is both reasonable and customary for an experienced attorney practicing in federal court in Manhattan. See Kapoor, 269 F. Supp. 2d at 415 (collecting "[r]ecent cases in New York City [that] have awarded attorney's fees in FDCPA cases at rates of $200.00" and allowing recovery of attorney's fees in an FDCPA action at $225.00 per hour). The lodestar for attorney's fees generated by Mr. Sokolski therefore totals $19,000.00.

Having determined the lodestar, the Court next considers whether that amount should be adjusted upward or downward. See Hensley, 461 U.S. at 434. Although a "strong presumption exists that the lodestar figure represents a reasonable fee," a district court "may . . . adjust the lodestar figure based on several factors, such as the outcome of the underlying litigation." Kapoor, 269 F. Supp. 2d at 412 (citing Hensley, 461 U.S. at 434-35; Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564-65 (1986)). The Court need not consider adjusting the figure upward because Plaintiffs do not argue that the lodestar amount should be enhanced. But Defendants argue that the lodestar amount should be adjusted downward on the ground that the level of success obtained here—what Defendants repeatedly characterize as a mere award of statutory

damages for a "technical" violation—cannot justify so much attorney time.

"When a party advocates that the lodestar amount be reduced, he or she bears the burden of establishing that a reduction is justified." Id. (citing U.S. Football League v. Nat'l Football League, 887 F.2d 408, 413 (2d Cir. 1989)). Defendants have not met their burden. Success is not measured solely by the damages awarded; here, Plaintiffs also had their rights vindicated. Further, Plaintiffs are evidently responsible for changing the practice of the New York City landlord bar with respect to adherence to the FDCPA. (See Pls.' Decl. Reply to Defs.' Opp'n to Pls.' Mot. Summ. J. at ¶¶ 5-6 (citing to the minutes of the June 11, 2002 meeting of the New York State Bar Association, Real Property Law Section, Landlord-Tenant Committee meeting, where this case was discussed in detail, and indicating that landlord groups have attempted to draft a standardized FDCPA-compliant notice to be sent by attorneys attempting to collect rent in New York City in response to this case).) Plaintiffs are therefore awarded $19,000.00 in attorney's fees under 15 U.S.C. § 1692k(a)(3).

### 2. Paralegal's Fees and Costs

Defendants do not contest the paralegal's fees and costs submitted by Plaintiffs. The Court finds that the 5.40 paralegal hours spent on this matter between December 1999 and May 2002 were reasonably spent in pursuit of issues where Plaintiffs were successful, and that $75.00 per hour for paralegal time is a reasonable and customary rate for Manhattan, such that the lodestar for paralegal's fees in this matter totals $405.00. Neither party has argued that the Court should adjust this lodestar amount. The Court further finds that the submitted costs and disbursements itemized by Plaintiffs, which total $1,264.50, are reasonable and customary and were reasonably spent in pursuit of issues where Plaintiffs were successful. Plaintiffs are therefore awarded $1,669.50 in paralegal's fees and costs under 15 U.S.C. § 1692k(a)(3).

III.  **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED**, as modified in this memorandum. The Clerk of the Court is directed to enter judgment in favor of Plaintiffs in the amount of **$21,769.50**—representing $1,100.00 in statutory damages and $20,669.50 in costs and fees —and to close this case.


**So Ordered:**  New York, New York
                June 6, 2005

*[signature]*
_____
Richard Conway Casey, U.S.D.J.